Case 3:21-cv-00298   Document 71   Filed on 04/23/24 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
April 23, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| TIERRA DE LOS LAGOS, LLC, d/b/a BEE SAND COMPANY, | § § § § § | |
| Plaintiff. | § | |
| V. | § | CIVIL ACTION NO. 3:21-cv-00298 |
| PONTCHARTRAIN PARTNERS, LLC, | § § § § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before me is Plaintiff's Motion for Entry of Judgment Including Attorneys' Fees and Pre-Judgment and Post-Judgment Interest. Dkt. 67. Having reviewed the briefing, the record, and the applicable law, I **GRANT IN PART** and **DENY IN PART** the motion.

## BACKGROUND

On January 30, 2024, a jury awarded Plaintiff Tierra de Los Lagos, LLC d/b/a Bee Sand Company ("Bee Sand") $111,090.00 for breach of contract damages. Because the procedural history leading up to that verdict is relevant to the motion before me, I will recount it in some detail.

**June 10, 2021:** Bee Sand sues Pontchartrain Partners, LLC ("Pontchartrain") in Galveston County Court at Law No. 3. Bee Sand's causes of action include breach of contract, suit on sworn account, quantum meruit, misapplication of trust funds, and attorney's fees. *See* Plaintiff's Original Petition and Request for Disclosure, *Tierra de Los Lagos, LLC v. Pontchartrain Partners, LLC*, No. 3:21-cv-184 (S.D. Tex. Jul 15, 2021), ECF No. 1-2.

**June 15, 2021:** Texas Governor Greg Abbott signs legislation specifying that a plaintiff who prevails on a breach of contract claim against a limited liability company may recover attorneys' fees. The legislation will take effect on September

1, 2021, and is applicable to lawsuits filed on or *after* that date. *See* Recovery of Attorney's Fees in Certain Civil Cases, 2021 Tex. Sess. Law Serv. Ch. 665 (H.B. 1578) (Vernon's); *see also* TEX. CIV. PRAC. & REM. CODE § 38.001 (permitting recovery of reasonable attorney's fees from an organization as defined by the Business Organizations Code); TEX. BUS. ORGS. CODE § 1.002(62) (including limited liability companies within the definition of "organization").

**July 15, 2021:** Pontchartrain removes the Galveston County Court at Law No. 3 case to the United States District Court for the Southern District of Texas, Galveston Division. *See* Defendant's Removal Notice, *Tierra de Los Lagos, LLC v. Pontchartrain Partners, LLC*, No. 3:21-cv-184 (S.D. Tex. Jul 15, 2021), ECF No. 1.

**July 26, 2021:** Aware of the upcoming statutory change to permit the recovery of attorneys' fees against limited liability companies, Bee Sand files a voluntary stipulation of dismissal (*see id.*, ECF No. 6), with the intention of re-filing its lawsuit after September 1, 2021 so it can recover attorneys' fees in the event it prevails in the litigation. Bee Sand informs Pontchartrain that it will be re-filing its lawsuit in Texas once the new Texas law takes effect on September 1, 2021.

**August 26, 2021:** Pontchartrain sues Bee Sand in Louisiana state court, asserting a cause of action for breach of contract and seeking a declaratory judgment that Pontchartrain did not breach any contract with Bee Sand. *See* Dkt. 1 at 1–2; Dkt. 1-7.

**September 3, 2021:** Bee Sand sues Pontchartrain in Galveston County Court at Law No. 3 for a second time, asserting the same causes of action it brought in its first lawsuit. *See* Dkt. 1-2 at 4–10. This is the "Instant Lawsuit."

**September 24, 2021:** Bee Sand removes the Louisiana case to the United States District Court for the Eastern District of Louisiana. *See* Notice of Removal by Defendant Bee Sand Company, *Pontchartrain Partners, LLC v. Tierra de Los Lagos, LLC*, No. 2:21-cv-1765 (E.D. La. Sep. 24, 2021), ECF No. 1.

**October 21, 2021:** Pontchartrain removes the Instant Lawsuit to the United States District Court for the Southern District of Texas, Galveston Division. *See* Dkt. 1.

**April 19, 2022:** Judge Wendy B. Vitter of the Eastern District of Louisiana grants Bee Sand's Motion to Dismiss Pontchartrain's Anticipatory Lawsuit and Motion to Transfer Venue to the Southern District of Texas, Galveston Division. *See Pontchartrain Partners, LLC v. Tierra De Los Lagos, LLC*, No. 21-1765, 2022 WL 1154823, at *5 (E.D. La. Apr. 19, 2022) ("Counsel for Pontchartrain is admonished to stop the childish fighting in the sandbox and return to the very able federal court in the Southern District of Texas to address this serious matter.").

**September 15, 2022:** The United States Court of Appeals for the Fifth Circuit affirms Judge Vitter's order. *See Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (holding that the district court did not abuse its discretion in dismissing the Louisiana case because the Louisiana and Texas lawsuits "were duplicative" and "Pontchartrain's Louisiana lawsuit was anticipatory in light of the fact that Bee Sand had informed Pontchartrain of its intent to refile").

**January 30, 2024:** The jury in the Instant Lawsuit returns a $111,090.00 breach of contract verdict in favor of Bee Sand and against Pontchartrain. *See* Dkt. 66 at 8.

Now, Bee Sand asks me to award $176,901.75 in attorneys' fees related to all litigation between Bee Sand and Pontchartrain—that is, (1) the first case Bee Sand filed in Galveston County that Pontchartrain removed and Bee Sand voluntarily dismissed (the "First Texas Lawsuit"); (2) Pontchartrain's Louisiana case, which included its state court lawsuit, Bee Sand's removal to federal court and Pontchartrain's appeal to the Fifth Circuit (the "Louisiana Action"); and (3) the Instant Lawsuit.

In response, Pontchartrain argues that Bee Sand's requested attorneys' fees from the First Texas Lawsuit and the Louisiana Action are not reasonable and

3

necessary because they concern "separate legal proceedings," and "were incurred on other legal matters and claims." Dkt. 69 at 1, 4. Pontchartrain also argues that Bee Sand's counsel's hourly rates "appear to be on the higher end" of the median hourly rate for the area. *Id.* at 5. Pontchartrain also complains that the amount of attorneys' fees sought is unreasonable because it exceeds the amount of the award of damages on the underlying breach of contract claim. Finally, Pontchartrain argues that attorneys' fees should not be awarded in this case because it "had a good-faith basis to contest the claims by Bee Sand." *Id.*

## LEGAL STANDARD

"In diversity cases[,] state law governs the award of attorney's fees. Texas follows the American Rule, under which a court may not award fees unless authorized by statute or contract." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021) (cleaned up). The Texas Civil Practice and Remedies Code provides that a person who prevails on a breach of contract claim and recovers damages is entitled to attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 31.008(8). "The award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract . . . is mandatory." *Matter of Smith*, 966 F.2d 973, 978 (5th Cir. 1992). "The party seeking attorney's fees bears the burden of proof." *Hong v. Havey*, 551 S.W.3d 875, 891 (Tex. App—Houston [14th Dist.] 2018, no pet.).

> District courts in this circuit calculate attorney's fees using the lodestar method—multiplying the number of hours reasonably expended by an appropriate hourly rate. After determining the lodestar amount, district courts employ a twelve-factor test derived from *Johnson v. Georgia Highway Express, Inc.*[, 488 F.2d 714 (5th Cir. 1974)] to determine whether counsel's performance requires an upward or downward adjustment from the lodestar.[1]

---

[1] The 12 *Johnson* factors are: (1) the "time and labor required"; (2) the "novelty and difficulty of the questions"; (3) the "skill requisite to perform the legal service properly"; (4) the "preclusion of other employment by the attorney due to acceptance of the case"; (5) the "customary fee"; (6) "[w]hether the fee is fixed or contingent"; (7) "[t]ime limitations imposed by the client or the circumstances"; (8) the "amount involved and the

*Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *2 (5th Cir. Mar. 18, 2022) (cleaned up); *see also DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003) (affirming district court's application of the *Johnson* factors to an attorneys' fees request in case based on diversity jurisdiction, and citing a Texas state court that utilized the *Johnson* factors). There is a "strong presumption that the lodestar represents the reasonable fee, and . . . the fee applicant who seeks more than that [bears] the burden of showing that such an adjustment is *necessary* to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (cleaned up).

## ANALYSIS

My first task in evaluating Bee Sand's request for attorneys' fees is to calculate the lodestar. To do that, I must evaluate Bee Sand's proposed hourly rates and assess the reasonableness of the hours billed by Bee Sand's counsel. Once the lodestar is established, I will consider the *Johnson* factors to determine whether an upward or downward departure from this amount is warranted.

### A. REASONABLE HOURLY RATES

Bee Sand seeks the following hourly rates for the listed attorneys and paralegals:

- $475 per hour for attorney Benjamin W. Allen;
- $425 per hour for attorney Robert H. Ford ("Ford");
- $400 per hour for attorney Gretchen S. Sween;
- $250 per hour for attorney Dreu Dixson;
- $175 per hour for paralegal Valerie Baker; and
- $175 per hour for paralegal Marissa Reyna.

*See* Dkt. 67 at 5.

---

results obtained"; (9) the "experience, reputation, and ability of the attorneys"; (10) the "'undesirability' of the case"; (11) the "nature and length of the professional relationship with the client"; and (12) "[a]wards in similar cases." *Johnson*, 488 F.2d at 717–19.

It is well-settled that attorneys' and paralegal's fees are to be calculated at the "prevailing market rates in the relevant community," "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984). The relevant community for all timekeepers except Ford is the Houston metropolitan area, which includes the Galveston Division. Because Ford worked exclusively on the Louisiana Action, the relevant community for him is the greater New Orleans metropolitan area. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." (quotation omitted)).

Pontchartrain argues that Bee Sand's hourly rates "appear to be on the higher end" of the median hourly rate for the area. Dkt. 69 at 5. In making this argument, Pontchartrain refers to the 2019 Income and Hourly Rates Report compiled by the State Bar of Texas ("Hourly Rates Report"), which indicates that that the median hourly rate for the Houston-The Woodlands-Sugar Land Metropolitan Statistical Area, which includes Galveston, is $297 per hour. *See* Dkt. 67-4 at 11. "Although the Hourly Rates Report contains interesting data, it is far from the holy grail regarding hourly rates." *Est. of Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-cv-320, 2023 WL 5018432, at *4 (S.D. Tex. Aug. 7, 2023). The findings are based entirely on survey results from Texas lawyers and do not distinguish between the reported billing method: hourly fees, flat rates, contingency fees, or discounted fees for volume clients. More tellingly, the data reports only median rates, which "do not account for the rate that might be reasonably charged by an attorney with significant experience or expertise in the field." *Tovar v. Sw. Bell Tel., L.P.*, No. 3:20-cv-1455, 2022 WL 2306926, at *3 (N.D. Tex. June 27, 2022). Tellingly, the first page of the Hourly Rates Report states that the "hourly rate information is *not* designed for nor intended to be used for setting appropriate attorney fees." Dkt. 67-4 at 2 (emphasis added). I thus assign little weight to the Hourly Rates Report.

Each attorney from whom Bee Sand seeks fees submitted a declaration stating that his or her proposed hourly rate is within the range of prevailing market rates in his or her respective metropolitan areas. Based on those declarations, as well as my familiarity—both as a lawyer and judge for the past 30 years—with the market for attorneys' fees in the Houston and Galveston area, I conclude that the requested rates provided by Bee Sand for the respective attorneys and paralegals are reasonable. Similarly, Ford's rate is reasonable for the New Orleans area.

**B.     REASONABLE HOURS EXPENDED**

The next step in the lodestar analysis is to determine the number of hours reasonably spent. The parties hotly dispute the number of hours reasonably spent.

### 1. *Bee Sand Is Not Entitled to Attorneys' Fees from the First Texas Lawsuit.*

As an initial matter, Bee Sand requests attorneys' fees incurred as a result of work performed in connection with the First Texas Lawsuit. That request is denied.

At the time Bee Sand filed the First Texas Lawsuit on June 15, 2021, it could not have recovered attorneys' fees against Pontchartrain because Pontchartrain was a limited liability company. *See Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[T]he entities against whom attorney's fees can be recovered under [§ 38.001] still should not include 'other legal entities' such as LLCs."). The very reason Bee Sand withdrew its lawsuit is because it *knew*, given the existing state of the law, that it could not recover attorneys' fees if it prevailed on the First Texas Lawsuit. It would defy logic to now allow Bee Sand to recover attorneys' fees from the First Texas Lawsuit. As such, attorneys' fees from the First Texas Lawsuit are not included in the lodestar.

### 2. *Bee Sand Is Entitled to Attorneys' Fees from the Louisiana Action.*

Bee Sand's request for attorneys' fees from the Louisiana Action—which includes Pontchartrain's suit against Bee Sand, Bee Sand's removal into federal court, and the Fifth Circuit's affirmance—is another story.

7

As a general rule, "the plaintiff is required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (cleaned up). "An exception to the fee-segregation requirement exists 'when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible.'" *Transverse*, 992 F.3d at 344 (quoting *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017)). "But the exception requires more than a common set of underlying facts; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Transverse*, 992 F.3d at 344 (cleaned up). "[T]he Texas Supreme Court has deemed the exception applicable where, for instance, a plaintiff in a breach-of-contract case must overcome related counterclaims in order to recover on that claim." *Id*.

Here, Pontchartrain's Louisiana Action against Bee Sand is plainly borne out of the same facts. I agree with Judge Vitter's description:

> Bee Sand is seeking recovery for a breach of contract due to Pontchartrain's failure to pay for clay and rip rap materials provided. In . . . Louisiana, Pontchartrain is seeking a declaration that it did not breach the same contract between the parties when it failed to pay Bee Sand for the delivery of clay and rip rap. Accordingly, . . . the two cases are substantially similar.

*Pontchartrain Partners*, 2022 WL 1154823, at *3.

Furthermore, had Pontchartrain prevailed on its claims in Louisiana, such a judgment would have obviously impeded Bee Sand's claims in this forum. In other words, Bee Sand had to defend itself in Louisiana to eventually prevail on the claims it brought to trial before me. Bee Sand is thus entitled to attorneys' fees from the Louisiana Action. I further conclude that the hours spent by Bee Sand in connection with the Louisiana Action were reasonable.

### 3. *Bee Sand Is Entitled to Attorneys' Fees from the Instant Lawsuit.*

The parties appear to agree that Bee Sand is entitled, as the prevailing party, to attorneys' fees incurred in the Instant Litigation. From my review of the billing records, I find the hours expended in this matter were reasonable.

### C. THE *JOHNSON* FACTORS

In analyzing the *Johnson* factors, I must specifically address two arguments Pontchartrain raises in opposing a fee award to Bee Sand.

First, Pontchartrain asserts the amount in attorneys' fees requested ($176,901.75) is unreasonable, given the jury's award of $111,090 in breach of contract damages to Bee Sand. Under Texas law, "disproportion alone [between the attorneys' fees requested and the damages awarded] will not render an attorney fee award excessive." *Quanta Servs. Inc. v. Am. Admin. Grp. Inc.*, 384 F. App'x 291, 298 (5th Cir. 2008); *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 802 (5th Cir. 2006) ("It remains true that there is no *per se* proportionality rule."). Awarded fees must, however, bear a "reasonable relationship to the amount in controversy or to the complexity" of the circumstances of the case. *Jerry Parks Equip. Co. v. Se. Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987). Here, the fees requested—and those ultimately awarded—bear a direct relationship to the amount in controversy and the complexity of the case. To obtain a jury verdict in its favor, Bee Sand had to fight Pontchartrain in several jurisdictions, pursue discovery, and ultimately, try this business dispute to a 12-member jury. The fees requested are not, on their face, anywhere close to outlandish or unreasonable.

Pontchartrain also argues that Bee Sand should not recover attorneys' fees because Pontchartrain had a good-faith basis for defending the lawsuit. This argument does not move me. Pontchartrain's conduct, in good faith or in bad faith, is completely irrelevant to an award of attorney's fees. "The award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her

breach of contract claim and recovers damages." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002).

Overall, I have independently reviewed the *Johnson* factors. My conclusion: the *Johnson* factors do not impact the ultimate fee calculation. I see no reason to adjust the fees in either an upward or downward direction based on those factors. Adding together the attorneys' fees incurred by Bee Sand in the Louisiana Action and the Instant Lawsuit results in a figure of $170,085.50.[2] This is the amount I will award to Bee Sand as reasonable and necessary attorneys' fees.

## D. APPELLATE ATTORNEYS' FEES

Bee Sand also requests "a conditional award of attorney's fees in the event that Pontchartrain unsuccessfully appeals." Dkt. 67 at 16. Specifically, Bee Sand seeks (1) $15,200 in the event Pontchartrain files an appeal to the Fifth Circuit Court of Appeals; (2) an additional $10,000 in the event the Fifth Circuit requests oral argument; (3) an additional $15,000 in the event Pontchartrain files a request for certiorari to the United States Supreme Court; and (4) an additional $15,000 in the event the Supreme Court requests oral argument.

"An award of attorney's fees may include conditional fees for an appeal." *Amlin Corp. Member, Ltd. v. Logistics Grp. Int'l, Inc.*, No. H-09-2695, 2011 WL 3271335, at *10 (S.D. Tex. July 28, 2011). "As with fees awarded for work during a trial, 'there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees.'" *Id.* (quoting *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.], 2006, no pet.)). Bee Sand has satisfied its burden to demonstrate reasonableness. The $15,200 fee for an appeal to the Fifth Circuit is the same amount Bee Sand spent on appellate fees for the interlocutory Fifth Circuit appeal in the Louisiana Action. The reasonableness of

---

[2] I calculate this amount by subtracting the attorneys' fees incurred from the First Texas Lawsuit ($6,816.25) from Bee Sand's requested fees ($176,901.75). The fees incurred from the First Texas Lawsuit include each time entry listed on Dkt. 67-5 at 2.

the other appellate fees requested is supported by the affidavit of Bee Sand's counsel, who avers that such sums are reasonable.

### E.     PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Finally, Bee Sand requests an award of pre-judgment interest at 6 percent from June 27, 2019, to the date of judgment, and post-judgment interest at 8.5 percent. Pontchartrain does not object to the award of these sums.

#### 1.     *Pre-Judgment Interest*

"In this diversity case state law governs the award of prejudgment interest." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996). "Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (quotation omitted). Under Texas law, awards of pre-judgment interest should be granted "as [a] matter of course," not of discretion, "when the trier of fact finds that damages accrued before the time of judgment." *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 549 (5th Cir. 1987).

Bee Sand explains that it is entitled to pre-judgment interest under Chapter 2251 of the Texas Government Code from the date the payment was due (June 27, 2019) to the date of judgment. The applicable pre-judgment interest rate is one percent plus the prime rate published by the Wall Street Journal in July of the fiscal year preceding the date the payment became overdue. *See* TEX. GOV'T CODE § 2251.025(b). The Wall Street Journal's published prime rate in July 2018 was 5 percent. Accordingly, the pre-judgment interest rate in this case is 6 percent per annum ($18.26 per day). For the 1,763 days from June 27, 2019 to today, the pre-judgment interest for which Bee Sand is entitled to amounts to $32,192.38.

#### 2.     *Post-Judgment Interest*

"The purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the

ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (cleaned up).

Bee Sand asks that I award post-judgment interest at the prevailing rate allowed by Texas law. But that is not the correct inquiry. In a diversity case such as this, the post-judgment interest rate is calculated in accordance with federal law. *See Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) ("Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law."). Under federal law, post-judgment "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). That rate is 5.12 percent per annum.

## CONCLUSION

In short, in addition to the $111,090.00 awarded by the jury as damages, Bee Sand is entitled to recover $170,085.50 in attorneys' fees as a prevailing plaintiff in this breach of contract action; pre-judgment interest in the amount of $32,192.38; and post-judgment interest at the rate of 5.12 percent. Bee Sand is also entitled to recover the following appellate fees: (1) $15,200 in the event Pontchartrain files an appeal to the Fifth Circuit Court of Appeals; (2) an additional $10,000 in the event the Fifth Circuit requests oral argument; (3) an additional $15,000 in the event Pontchartrain files a request for certiorari to the United States Supreme Court; and (4) an additional $15,000 in the event the Supreme Court requests oral argument.

I will enter a final judgment separately.

SIGNED this 23rd day of April 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE